## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

IN RE:      FRANCES C. CHAN          :      Chapter 7
                                     :
            Debtor(s)                :      Bky. No. 06-13521ELF
                                     :


# M E M O R A N D U M   O P I N I O N

## BY:  ERIC L. FRANK,  U.S.  BANKRUPTCY JUDGE

### I.

In this case, an unsecured creditor seeks relief from the automatic stay under 11 U.S.C. §362(d)(1) in order to proceed with a lawsuit that she commenced against the Debtor in the U.S. District Court for the Eastern District of Pennsylvania a few weeks before the commencement of the Debtor's chapter 7 bankruptcy case.  In the litigation, the creditor raises claims of fraud and breach of fiduciary duty, claims which may be nondischargeable under 11 U.S.C. §523(a)(2) and (4).  There are many reported decisions that discuss the analysis a bankruptcy court should employ when exercising its discretion to resolve a motion of this nature brought by an unsecured creditor. What distinguishes this case is that the creditor asserted claims in the pre-bankruptcy lawsuit that may be nondischargeable under 11 U.S.C. §523(a)(19).

A question presented by this case is whether the court should exercise its discretion to grant the creditor relief from the automatic stay due to the existence of the prepetition claim that may be nondischargeable under 11 U.S.C. §523(a)(19).

As explained below, I conclude that the existence of a §523(a)(19) claim may be considered in the §362(d)(1) analysis, but it is not outcome determinative.  After evaluating the

-1-

factors traditionally employed in resolving §362(d)(1) motions filed by unsecured creditors, I

conclude, in the exercise of my discretion, that the creditor's motion should be denied.

## II.

### A.

Debtor Frances C. Chan filed a voluntary petition under chapter 7 of the Bankruptcy Code

in this court on August 16, 2006.  On September 1, 2006, Dorothy Park ("Ms. Park") filed a

Motion for Relief from the Automatic Stay and for an Extension of the Deadline for Filing a

Complaint Objecting to Discharge or to Determine Dischargeability ("the Motion" or "Ms.

Park's Motion").  On September 18, 2006 the Debtor filed a response to the Motion.

A hearing on the Motion was held on September 27, 2006.  No evidence was presented

by either party and there appears to be no dispute concerning the facts that are material to the

disposition of the Motion.  On the same day of the hearing, but after its conclusion, Ms. Park

submitted a letter in lieu of a more formal brief in support of the Motion.  On October 6, 2006,

the Debtor submitted a letter in opposition to the Motion.[1]  The Motion is now ready for decision.

---

[1]  Both of the "letter-briefs" have been docketed.  In content, each "letter-brief" was
indistinguishable from a memorandum of law.  Thus, it is not clear to me the significance of the
parties use of a "letter-brief" format.  In any event, I have considered both submissions before
ruling in this matter.

**B.**

On July 25, 2006, approximately three (3) weeks before the commencement of this

chapter 7 bankruptcy case, Ms. Park filed a lawsuit against the Debtor in the U.S. District Court

for the Eastern District of Pennsylvania docketed at Civ. Action No. 06-3220 ("the District Court

Action").  In the complaint filed in the District Court Action ("the District Court Complaint"),

Ms. Park alleges that the Debtor induced her to invest $300,000 in a company called My Favorite

Child, Inc. d/b/a Her Royal Highness ("the Company").  Ms. Park alleges that the Debtor was the

sole shareholder director and president of the Company.  The Complaint states that in return for

the $300,000 investment, Ms. Park was promised 4,000 shares of the Company, a minimum of

ten percent (10%) return on the investment and the opportunity to become a head of the

Company's wholesale operations.

The gravamen of the District Court Complaint is that in order to induce Ms. Park to

invest in the Company, the Debtor misrepresented the financial condition of the Company and

her intended use of the funds Ms. Park invested in the Company.   The factual averments in the

District Court Complaint conclude with the following two allegations:

> Had [Ms. Park] known the true financial condition of the Company and [the] true
> purpose of raising funds, [Ms. Park] never would have invested in the Company.
> The Company is now a failing business entity and out of money largely because
> [the Debtor] misused [Ms. Park's] investment in paying off the Company's
> existing yet undisclosed debts and paying herself rather than purchasing certain
> merchandise for the Company.

District Court Complaint ¶¶30-31 (paragraph numbers omitted).

The District Court Complaint asserts four (4) claims as follows:

1.  violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.

§78j(b) and Rule 10b-5;

2.   violation of the Pennsylvania Securities Act of 1972, 70 P.S. §§1-101 <u>et seq</u>.;

3.   common law fraud; and

4.   breach of fiduciary duty.


## III.

Ms. Park seeks relief from the automatic stay pursuant to 11 U.S.C. §362(d) in order

resume and complete the litigation of the District Court Action.

Section 362(d) of the Bankruptcy Code provides:

> On request of a party in interest and after notice and a hearing, the court shall
> grant relief from the stay provided under subsection (a) of this section, such as
> by terminating, annulling, modifying, or conditioning such stay–
>
> > (1) for cause, including the lack of adequate protection of an
> > interest in property of such party in interest . . . .

Earlier this year, in <u>In re Glunk</u>, 342 B.R. 737 (Bankr. E.D. Pa. 2006), I observed that a

common formulation of the "test" for determining whether cause exists to grant relief from the

automatic stay to an unsecured creditor is a "balancing of the harms."

> [C]ourts have allowed modification of the Section 362 stay and its
> predecessor under the Bankruptcy Act where no great prejudice to either
> the estate or the debtor would result and where the hardship to the plaintiff
> caused by the continuance of the stay outweighs the hardship to the debtor
> caused by stay modification.

<u>Id</u>. at 740 (quoting <u>In re Johns-Manville Corp.</u>, 26 B.R. 420, 433 (Bankr. E.D.N.Y.1983), <u>vacated</u>

<u>in part</u>, 41 B.R. 926 (S.D.N.Y. July 31, 1984)); <u>accord</u>, <u>In re Causa</u>, 93 B.R. 409, 411 (Bankr.

E.D. Pa. 1988); <u>In re Stranahan Gear Co., Inc.</u>, 67 B.R. 834, 838 (Bankr. E.D. Pa. 1986).

-4-

The balancing of the harms test has been used by courts with some frequency to support the grant of relief from stay when a creditor seeks to return to state court to assert a claim that may be satisfied by a debtor's prepetition insurance coverage.  See In re Glunk, 342 B.R. at 740 (citing cases).  Conversely, the test has been employed to deny relief when the outstanding issues that need resolution are fully capable of being resolved in the bankruptcy court and there are no special circumstances that cause the balance of the hardships to tip in favor of the creditor seeking relief.  See, e.g., In re U.S. Physicians, Inc., 236 B.R. 593 (Bankr. E.D. Pa. 1999).

There are several reasons why special circumstances must be present before an unsecured creditor is granted relief from the automatic stay for cause: (1) one of the purposes of the automatic stay is to give the debtor a respite from the time and expense of responding to the collection efforts and litigation initiated by creditors; (2) if the claim will be discharged in a no-asset case, no purpose would be served by further litigation to determine the existence of and the amount of the liability; and (3) in a case involving the distribution of assets in the bankruptcy case, most disputes relating to the validity and amount of an unsecured creditor's claim can be resolved through the proof of claim process.  See In re Quad Systems Corp., 2001WL 1843379, *5-*6 (Bankr. E.D. Pa. 2001).  Nevertheless, as our Court of Appeals has recognized, the legislative history of §362(d) expressed Congress' intention that there are cases in which it is "more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere."  In re Wilson, 116 F.3d 87, 91 (3d Cir. 1997) (quoting S. Rep. No. 95-989, at 50 (1978)).

A different, more multi-faceted approach for determining whether cause exists under

§362(d)(1) was set out in In re Brown:

> "Cause" is an intentionally broad and flexible concept which must be determined on a case-by-case basis. Indeed, there are a multitude of reported decisions discussing relief from the stay for "cause," all of which are fact intensive and generally offer no precise standards to determine when "cause" exists to successfully obtain relief from the stay. *A court may consider the policies reflected in the bankruptcy code, and the interests of the debtor, other creditors and any other interested parties. Unsecured creditors are generally entitled to relief from an automatic stay only in extraordinary circumstances*.

311 B.R. 409, 412-13 (E.D. Pa. 2004) (emphasis added).

Given the broad discretion accorded to the bankruptcy court as described in Brown, it is

therefore, not surprising that some courts have designed lists of "factors" to be considered in

determining whether "cause" exists under §362(d)(1).  For example, in In re Granati, the court

identified four (4) factors to be considered:

> (1) whether only issues of state law are involved;

> (2) whether judicial economy will be promoted;

> (3) whether the litigation will interfere with the bankruptcy case; and

> (4) whether the estate can be protected by requiring that any judgment obtained be enforced only through the bankruptcy court.

271 B.R. 89, 93 (Bankr. E.D. Va. 2001) (citing In re Robbins, 964 F.2d 342 (4th Cir. 1992)).

Other courts have developed a checklist of twelve (12) factors to be considered:

> (1) Whether the relief will result in a partial or complete resolution of the issues.

> (2) The lack of any connection with or interference with the bankruptcy case.

> (3) Whether the non-bankruptcy proceeding involves the debtor as a fiduciary.

> (4) Whether a specialized tribunal has been established to hear the particular cause

of action and that tribunal has the expertise to hear such cases.

(5) Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation.

(6) Whether the action primarily involves third parties.

(7) Whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee or other interested parties.

(8) Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c).

(9) Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f).

(10) The interest of judicial economy and the expeditious and economical determination of litigation for the parties.

(11) Whether the non-bankruptcy proceedings have progressed to the point where the parties are prepared for trial.

(12) The impact of the stay on the parties and the "balance of hurt."

See In re Sonnax Industries, Inc., 907 F.2d 1280 (2d Cir. 1990); In re Curtis, 40 B.R. 795, 800

(Bankr. D. Utah 1984)(citations omitted).  See also  In re Brown, 311 B.R. at 413 (approving

bankruptcy court's use of factors set forth in Sonnax in ruling on §362(d) motion).

The relevance and weight of the various overlapping factors outlined above will depend

upon the circumstances of the particular bankruptcy case involved.  Not all of the factors may be

relevant in a particular case; the factors that are relevant may not be entitled to equal weight.

Thus, the decision whether to grant relief from the automatic stay to an unsecured creditor is not

a mechanical or mathematical exercise.  As one court observed in a related context, a list of

considerations employed by a court in making a decision is

> simply . . . a guide to the required inquiry; the wise exercise of discretion is rarely
> a matter of score-keeping or bean-counting. Ultimately, the pursuit of "equit[y],"
> "justice" and "comity" involves a thoughtful, complex assessment of what makes
> good sense in the totality of the circumstances.

Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. Partnership, 2004 WL 1048239, at *3 (S.D.N.Y.

May 7, 2004).[2]

    With these principles in mind, I turn to the circumstances in this case.


## IV.

## A.

    The District Court Complaint alleges, in large part, a traditional claim for fraud.  The

District Court Complaint also asserts that the Debtor was a fiduciary and breached her fiduciary

obligations.  Such claims, if proven, may be nondischargeable in a chapter 7 bankruptcy case.

See 11 U.S.C. §523(a)(2) and (4).  That is the most salient aspect of this case – i.e., that Ms. Park

seeks relief in order to proceed with litigation in a non-bankruptcy forum of a debt that may not

be dischargeable.  Indeed, her motion requests that she be granted an extension of time to file

dischargeability complaint under 11 U.S.C. §523(a) or an objection to discharge pending the

conclusion of the District Court Action.

    In a case involving a potential §523(a)(2) or (4) dischargeability determination, my

analysis of the appropriate policy considerations begins with 11 U.S.C. §523(c).  Section

523(c)(1)  provides that except as provided in §523(a)(3)(B), a debt that is of the kind specified

---

    [2]  Kerusa Co. LLC involved a request that a removed proceeding be remanded, not a
request for relief from the automatic stay.  However, both requests ask the same fundamental
question: is the non-bankruptcy court the more appropriate forum for resolution of the dispute
between the parties?

in §523(a)(2), (4) or (6) (i.e., a debt that would be nondischargeable under those provisions) is

nonetheless dischargeable "unless, on request of the creditor to whom such debt is owed, and

after notice and hearing, the court determines such debt to be excepted from discharge" under

§523(a)(2), (4) or (6).  Section 523(c) is supplemented by Fed. R. Bankr. P. 4007(c), which

establishes a time deadline for filing a complaint to determine dischargeability of a debt under

§523(c).  In other words, the Bankruptcy Code and the Bankruptcy Rules contemplate that

dischargeability determinations under §523(a)(2), (4) and (6) will be made exclusively by the

bankruptcy court and that a debt will be discharged unless a dischargeability determination is

requested in the bankruptcy court within a time deadline fixed by the rules of court.

      Section 523(c) has been described as delegating to the bankruptcy court "exclusive

jurisdiction" of nondischargeability claims under  §523(a)(2), (4) or (6).  E.g., Whitehouse v.

LaRoche, 277 F.3d 568, 578 (1st Cir. 2002); Spilman v. Harvey, 656 F.2d 224, 226 (6th Cir.

1981); In re Otto, 311 B.R. 43 (Bankr. E.D. Pa. 2004).  Not surprisingly, bankruptcy courts make

determinations of dischargeability under §523(a)(2), (4) and (6) routinely and frequently.

      The delegation to the bankruptcy court of the exclusive authority to make dischargeability

determinations under §523(a)(2), (4) and (6) is a significant consideration in evaluating a

creditor's request for relief from the stay to litigate in another forum the merits of a claim that

may be nondischargeable under one or more of those subsections.  In such cases, ordinarily, a

bankruptcy court should deny a creditor's motion for relief under §362(d)(1) and compel the

creditor, who wishes to prove that its claim is derived from the debtor's fraudulent conduct, to

file a dischargeability complaint and litigate the issue in the bankruptcy court.

      There may be cases, however, in which additional circumstances exist that render it

-9-

appropriate for the non-bankruptcy court to be the primary forum for litigation of the parties'

issues, even though dischargeability issues must be resolved in the bankruptcy court.  See In re

Cummings, 221 B.R. 814, 819 n.9  (Bankr. N.D Ala. 1998) (collecting cases). For example, if the

proceedings have been pending in the nonbankruptcy forum for a substantial period and are ready

for trial in the non-bankruptcy forum, it may be appropriate to grant relief from the automatic

stay to permit the litigation in the non-bankruptcy forum to be concluded.  Similarly, when there

are multiple parties involved in the non-bankruptcy litigation, considerations of judicial economy

may support the return of the litigation to the non-bankruptcy forum.  In both of these situations,

the bankruptcy court may exercise its discretion to grant relief from the automatic stay while

simultaneously imposing appropriate conditions to prevent prejudice to the bankruptcy estate or

the debtor until the remaining bankruptcy issues are resolved by the bankruptcy court.  Thus, the

bankruptcy court may permit the non-bankruptcy action to proceed, but restrain execution on any

judgment until the dischargeability of the debt has been determined in the bankruptcy court.

After the conclusion of the non-bankruptcy action, it may be possible, through the application of

collateral estoppel, to streamline the additional bankruptcy court proceedings that are necessary

to determine dischargeability.  See, e.g., In re Glunk, 324 B.R. at 742 & n.38.

In the Motion, Ms. Park emphasizes that continuance of the stay will result in the loss of

her right to a jury trial."  Motion ¶13.  I do not perceive the potential loss of jury trial rights to be

sufficient a basis, standing alone, to override the Congressional policy embodied in §523(c).[3]

---

[3]  A dischargeability determination is not the only part of the bankruptcy process that may
override a creditor's right to a jury trial right.  Creditors who wish to participate in a distribution
from the bankruptcy estate also may have to forego their right to a jury trial.  See, e.g.,Travellers
International AG v. Robinson, 982 F.2d 96 (3d Cir. 1992) (filing of proof of claim is a waiver of
the right to a jury trial).

Further, it is not obvious to me that the loss of Ms. Park's right to a jury trial outweighs the

benefit to the Debtor of a less costly bench trial in this court.  As the <u>Cummings</u> court

recognized, practical considerations of cost to the debtor and the impact on the debtor's financial

ability to defend against a creditor's claim must be considered in balancing the rights of the

parties:

> The financial burden of defending a state court proceeding (and the deleterious consequences, win or lose, which shouldering that burden will presumably have on a debtor's opportunity to gain the fresh start contemplated by the Bankruptcy Code) may preclude relief from the stay in situations [where] the dischargeability of the debt underlying the state court proceeding has been put into issue in the bankruptcy court (absent extenuating circumstances militating in favor of passing the litigation to the state court). Certainly, a debtor must, if relief from the stay is denied, still defend against a non-dischargeability complaint in bankruptcy, and that debtor will of course incur some expense in making that defense. However, the expense of defending in [the bankruptcy court] will ordinarily be less than the expenditures that would be required of a debtor to mount a satisfactory defense in a state court trial. Bankruptcy procedure for determining the dischargeability of debts is, more than a trial in state court, by design, a more expedient, efficient and less costly mechanism for both determining dischargeability of a debt and for liquidating a debt underlying a claim of non-dischargeability.

<u>In re Cummings</u>, 221 B.R. at 820.

I am not persuaded that special circumstances exist in this case to warrant deviation from

the customary policy of bankruptcy court determination of a §523(c) debt.  The District Court

Action was filed only a few weeks before the commencement of the bankruptcy case and

necessarily could not have progressed to any substantial degree.  Nor are there any other parties

involved in the District Court Action.  Additionally, the claims Ms. Park asserted and the facts

underlying the claims do not appear to be especially complex. These circumstances all militate in

favor of retention of the litigation in the bankruptcy court notwithstanding Ms. Park's jury

demand in the District Court Action.

However, before I reach an ultimate conclusion on stay relief, I must evaluate two other aspects of this case: (1) Ms. Park's potential nondischargeability claim under 11 U.S.C. §523(a)(19) and (2) the potential for mandatory withdrawal of the reference of Ms. Park's claim under 28 U.S.C. § 157(d).

**B.**

The District Court Complaint alleges a claim under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §78j(b). Section 523(a)(19) of the Bankruptcy Code includes among the debts that are excepted from discharge a debt that:

> **A)** is for--
>
> > **(I)** the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or
> > **(ii)** common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and
>
> **(B)** results, before, on, or after the date on which the petition was filed, from--
> > **(I)** any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;
> > **(ii)** any settlement agreement entered into by the debtor; or
> > **(iii)** any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

Section 3(a)(47) of the Securities Exchange Act of 1934 is codified at 15 U.S.C. § 78c(a)(47) and includes the Securities and Exchange Act of 1934 itself within its definition of "securities laws." Count I of the District Court Complaint asserts a claim for damages for violation of the Securities and Exchange Act of 1934. Thus, Ms. Park has asserted a claim against the Debtor that may fall within the §523(a)(19) discharge exception.

-12-

Section 523(a)(19) was added to the Bankruptcy Code by §803 of the Sarbanes-Oxley Act of 2002.  Pub. L. No. 107-24, 116 Stat. 745.  Its purpose was to "[a]mend the Bankruptcy Code to make judgments and settlements based upon securities law violations nondischargeable, protecting victims' ability to recover their losses." 148 Cong. Rec. S1787 (daily ed. March 12, 2002)(statement of Senator Leahy).[4]  By its terms, §523(a)(19) "encompasses both statutory securities violations and common law fraud in securities transactions."  In re Civiello, 348 B.R. 459, 464 (Bankr. N.D. Ohio 2006).

Three aspects of the §523(a)(19) exception to discharge are notable.

First, the merits of the §523(a)(19) discharge exception are indistinguishable from the merits of the underlying legal claim.  Unlike other subsections of §523(a), which establish exceptions to discharge defined by elements specified in the Bankruptcy Code,[5] the §523(a)(19) discharge exception is defined, at least in part, in terms of claims established under specified non-bankruptcy statutes.  Thus, to determine whether a claim arising under the Securities Exchange Act of 1934 is dischargeable under §523(a)(19), it may be necessary for a court to try the merits of the underlying legal claim.

A second significant aspect of §523(a)(19) is that determination of dischargeability under the provision is not committed exclusively to the bankruptcy court by 11 U.S.C. §523(c).  Other courts, state and federal, have concurrent jurisdiction to determine dischargeability. See, e.g., In re Otto, 311 B.R.  at 46 (referring to concurrent jurisdiction of non-bankruptcy courts over

---

[4]  For a more complete discussion of the legislative history of §523(a)(19), see In re Gibbons, 289 B.R. 588, 591-93 (Bankr. S.D.N.Y. 2003).

[5]  See, e.g., §523(a)(2), (4), (6), (7), (9).

dischargeability determinations under 11 U.S.C. §523(a)(1) and (7)).

Third, in its original formulation, §523(a)(19)(B) contained only the words "that results from."  Thus, as originally enacted, the provision, on its face, required the existence of a pre-bankruptcy judgment, order or settlement agreement as a condition of nondischargeability. The additional words "before, on, _or after_ the date on which the petition was filed," were inserted between the words "results" and "from" in 2005 by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").[6]   The amendment to §523(a)(19) enacted in 2005 is effective retroactively to July 30, 2002.  Pub. L. No. 109-8, §1404(b), 119 Stat. 23 (2005).

In In re Zimmerman, 341 B.R. 77 (Bankr. N.D. Ga. 2006), the court held that the existence of a claim which is asserted to be nondischargeable under 11 U.S.C. §523(a)(19) overrides the general bankruptcy policy favoring bankruptcy court determination of dischargeability issues.[7]  On this basis, the court granted the creditor relief from the automatic stay.

The ratio decidendi of the decision in Zimmerman was that the BAPCPA amendment to §523(a)(19) expressed Congress' intent that claims that are potentially nondischargeable under §523(a)(19) should be litigated in a non-bankruptcy forum:

---

[6]  Pub. L. No. 109-8, §1404(a), 119 Stat. 23 (2005) (emphasis added).

[7]  The Zimmerman court granted the moving creditors relief from the automatic stay to litigate their claims, potentially nondischargeable under §523(a)(19) outside of the bankruptcy court.   Also, in the interest of comity and judicial economy, having granted relief from the stay with respect to the §523(a)(19) claims, the court also granted relief from the automatic stay with respect to other claims, potentially nondischargeable under §523(a)(2), (4) or (6).

-14-

> Section 523(a)(19) expressly contemplates a postpetition determination of liability by a
> nonbankruptcy forum for debts resulting from securities law violations as well as
> common law fraud, deceit, or manipulation in connection with the purchase or sale of a
> security. Importantly, § 362(c)(1)[sic][8] does not require the bankruptcy court to determine
> nondischargeability. Taken together, therefore, § 523(a)(19) and § 362(c)(1) express a
> Congressional determination that creditors asserting a debt of this nature have the right to
> pursue their claims under nonbankruptcy law in other courts, notwithstanding the
> bankruptcy filing.

Id. at 80.

Respectfully, I am not persuaded by the reasoning in Zimmerman.   In my view, the

Zimmerman court read too much into phrase added ti §523(a)(19) by BAPCPA.

The phrase  "before, on, or after the date on which the petition was filed" was not added

to §523(a)(19) to provide creditors with an unfettered right to proceed in a nonbankruptcy forum,

notwithstanding a defendant's commencement of a bankruptcy case.  Rather, the phrase was

intended to make it clear that a debt arising under the federal securities laws or as a result of

fraud in connection with the sale of a security may be determined nondischargeable under

§523(a)(19) even if the liability was not fixed prior to the commencement of the bankruptcy case.

In other words, the phrase was added to the statute to remove a temporal limitation from the

elements of the §523(a)(19) discharge exception.  The additional phrase merely insures that the

efficacy of the discharge exception is not dependent upon the timing of the liability

determination; i.e., dischargeability will not turn on whether the creditor or the debtor wins the

"race to the courthouse."  This construction of §523(a)(19)  is in accord with other courts which

have applied the BAPCPA amendment to §523(a)(19).  See Mansfield v. Bastrom, 2005 WL

1798270, *1 (W.D. Wash. 2005) (holding that the BAPCPA amendment to §523(a)(19)

---

[8] I believe the Zimmerman court intended to refer to §523(c)(1) both times that it cited
§362(c)(1) in the quoted passage.

"eliminates the requirement of a prefiling judgment"); In re Weilein, 328 B.R. 553, 555 (Bankr. N.D. Iowa 2005) (same), reconsidering 319 B.R. 175 (Bankr. Iowa 2004) (under pre-2005 version of §523(a)(19), judgment, order or settlement agreement must have been in existence pre-bankruptcy for discharge exception to apply).

Since I decline to follow the Zimmerman decision,   I do not interpret §523(a)(19) to be a discharge exception, unique in §523(a), mandating that all liability and dischargeability determinations take place in a non-bankruptcy forum.[9]  Rather, section 523(a)(19) is indistinguishable from the other discharge exceptions determinations which are not committed to the exclusive jurisdiction of the bankruptcy court by 11 U.S.C. §523(c)(1).  Based on the concurrent jurisdiction which exists, it is perfectly appropriate for either the  bankruptcy court or another court to make a dischargeability determination under §523(a)(19).

Therefore, I conclude that the exercise of my discretion whether to grant relief from the automatic stay in this case should be governed by the ordinary principles which guide a bankruptcy court's decision on the subject, as discussed in Part III above, notwithstanding the existence of a claim against the Debtor which may be nondischargeable under §523(a)(19).

Before reaching a final conclusion, however, I must consider whether there are any other legal principles which may prevent all of the issues between the parties from being tried in the bankruptcy court.  I next consider the effect on this case, if any, of 28 U.S.C. §157(d).

---

[9]  My construction of §523(a)(19) is based on its text and the structure of of §523(a).  The legislative history of the 2005 amendment of §523(a)(19) is sheds no further light on its meaning.

## C.

Section 157(d) of the Judicial Code provides, in pertinent part:

> The district court shall, on timely motion of a party, so withdraw a proceeding if
> the court determines that resolution of the proceeding requires consideration of
> both title 11 and other laws of the United States regulating organizations or
> activities affecting interstate commerce.

28 U.S.C. §157(d).

While the issue of withdrawal of the reference is, by its very nature, reserved for the

District Court, I address the issue because the likelihood of mandatory withdrawal of the

reference impacts my assessment of the propriety of granting relief from the automatic stay.  If

there were a reasonable probability that §157(d) applies in this case – based on Ms. Park's

assertion of a claim under the Securities Exchange Act of 1934 – the balance may tilt in favor of

granting Ms. Park relief from the automatic stay.     This is because if §157(d) applies, all of the

litigation between the parties is likely to be tried in the District Court, regardless of the outcome

of Ms. Park's Motion.[10]  However, I consider it highly unlikely that §157(d) is applicable in this

------

[10]  Consider the following two scenarios:

(1) If I deny relief from the automatic stay, the parties will initiate one or more
adversary proceedings in the bankruptcy court to determine dischargeability under
§523(a)(2), (4) and (19). Then, pursuant to §157(d), Ms. Park seeks and obtains
mandatory withdrawal of the reference with respect to the §523(a)(19).  And finally, in
the interest of judicial economy, the District Court (upon timely request of one of the
parties) withdraws the reference with respect to the other §523(a) claims.

(2) If I grant Ms. Park relief from the automatic stay to permit the District Court
Action to proceed, the following ensues: The outcome of the litigation of Ms. Park's
claim under the Securities Exchange Act of 1934 would serve as a functional
determination of dischargeability under §523(a)(19).  As for Ms. Park's §523(a)(2) and
(4) claims asserted in this court, if either party believes (or both parties believe) that
consolidation of all of the issues in one trial is of paramount importance, a request can be
directed to the District Court for withdrawal of the Bankruptcy Court reference.  I would

case.

As the court explained in <u>In re St. Mary Hospital</u>, 115 B.R. 495 (E.D. Pa.1990), the

majority of courts have declined to apply the text of §157(d) in a strictly literal fashion:

> In <u>In re White Motor Corp.</u>, 42 B.R. 693 (N.D. Ohio 1984), the first case to tackle section
> 157(d), the court analyzed the legislative history of the statute and concluded that
> withdrawal is mandatory "only if th[e court] ⋯ can make an affirmative determination
> that resolution of the claims will require substantial and material consideration of those
> non-Code statutes" which have more than a "*de minimis* " impact on interstate commerce.
> *Id.* at 705. The court further cautioned that section 157(d)'s mandatory withdrawal
> provision is "not an escape hatch through which most bankruptcy matters will be
> removed to the district court," but should be used only where it is absolutely necessary
> under the circumstances and not where the withdrawal motion is based on speculation
> about federal issues which may or may not arise in the proceedings. *Id.* at 704. Other
> courts, a minority, apply section 157(d) literally and use the mandatory withdrawal
> provision only when resolution of the proceeding requires "substantial and material"
> consideration of *both* bankruptcy and non-bankruptcy law. This position has not attracted
> as many followers as that espoused in <u>White Motors</u> because it seemingly defeats the
> whole purpose of section 157(d), the withdrawal of matters requiring the application of
> non-bankruptcy law from the relatively less experienced bankruptcy court to the more
> experienced district court. Under the minority view, it may happen that issues in which
> the bankruptcy court is less experienced remain with it because there are no novel,
> material bankruptcy issues. If the intent of section 157(d) is to have substantial and
> material non-bankruptcy matters determined by the district court, it would seem
> incongruous to prevent their withdrawal just because there are no substantial and material
> bankruptcy questions that are also involved.

<u>Id</u>. at 497 (citations omitted).

Other district court judges in this district have agreed with the conclusion of the court in

<u>St. Mary Hospital</u> that mandatory withdrawal of the reference is appropriate only if the case

---

expect such a request be receive favorable consideration by the District Court.

The hypotheticals in the preceding paragraphs assume <u>arguendo</u> that mandatory
withdrawal of the reference under §157(d) is appropriate in this case. As explained in the text
above, however, I find it improbable that mandatory withdrawal of the reference under §157(d)
would be applicable in this case.

requires a complex search for the appropriate interpretation of the non-bankruptcy federal statute.

See In re Image Storage/Retrieval Systems, Inc., 1992 WL 25373, at *3 (E.D. Pa. February 7,

1992) (concluding that). See also In re Schlein, 188 B.R. 13 (E.D. Pa. 1995); Young v. Snider,

1994 WL 81955 (E.D. Pa.. March 11, 1994); In re Philadelphia Training Center, Inc., 155 B.R.

109 (E.D. Pa. 1993); In re Quaker City Gear Works, Inc., 128 B.R. 711 (E.D. Pa. 1991).

        While the issues between Ms. Park and the Debtor have not been developed beyond the

pleading stage in the District Court Action, it is unlikely that the relatively straightforward

factual matrix underlying Ms. Park's claim will give rise to a complex issue of statutory

construction under the Securities Exchange Act of 1934.  Thus, it appears highly unlikely that

mandatory withdrawal of the reference would apply in this matter.


                                    **V.**

        Because I find it improbable that §157(d) applies in this case, I return to the general

principles that apply in considering motions for relief under 11 U.S.C. §362(d)(1).  In this case,

the pre-bankruptcy lawsuit has not progressed to any significant degree.  In light of the of two

potential nondischargeable claims over which the bankruptcy court has exclusive jurisdiction and

one potential nondischargeable claim over which the bankruptcy court has concurrent

jurisdiction,  I believe that the most appropriate procedure is one that will maximize the goal of

economy for the courts and the parties.

        Ms. Park would have me grant relief from the automatic stay to permit the District Court

to try the entire dispute.  Ms. Park's suggested approach is certainly not unreasonable.  However,

I find that the goal of judicial economy dovetails more closely with the retention of the litigation

                                    -19-

in this court.  If the matters are tried in the bankruptcy court, the risk of multiple proceedings is

eliminated.[11]  In addition, as stated earlier, in this court, the case can be tried with less expense to

the parties and the court system.  The benefits of judicial economy, combined with the

bankruptcy policy embodied in 11 U.S.C. §523(c), cause me to conclude that the better outcome

is to deny Ms. Park's Motion.

      To summarize, as a threshold matter, I conclude that the determination whether to grant

relief from the automatic stay to a creditor, who wishes to proceed with litigation of a claim that

may be nondischargeable under §523(a)(19), should be governed by the general principles

employed by courts in determining §362(d)(1) relief.  In this case, I am not persuaded that special

circumstances exist to merit a deviation from the general (but not inflexible) rule that the

bankruptcy court should retain jurisdiction of litigation of matters arising under 11 U.S.C.

§523(a)(2), (4) and (6).  The outcome is not altered due to the existence of Ms. Park's

§523(a)(19) nondischargeability claim.  That claim is closely related to the nondischargeability

claims she may raise under §523(a)(2) and (4).  The §523(a)(2) and (4) claims must be

determined in the bankruptcy court pursuant to 11 U.S.C. §523(c)(1).  While Ms. Park is under

---

      [11]  If I were to permit the District Court Action to go forward, there are a number of
possible outcomes.  If judgment is entered in favor of the Debtor on all counts, there is obviously
no dischargeability issue remaining to be decided.  Similarly, if Ms. Park prevails on all of her
claims, including the §523(a)(19) claim, presumably, she would not need to return to the
bankruptcy court for a determination of nondischargeability on her fraud and breach of fiduciary
duty claims.  However, if Ms. Park prevails only on the claims which may be nondischargeable
under §523(a)(2) or (4), further proceedings in the bankruptcy court will be necessary, albeit
possibly truncated due to the potential application of collateral estoppel.  By comparison, if I
deny Ms. Park's motion and maintain the stay in place, it is likely that the entire dispute can be
litigated in the bankruptcy court.  Ms. Park may seek a determination of dischargeability under
§523(a)(2), (4) and (19).  If she does not raise the §523(a)(19) issues in this court, the Debtor
may initiate an adversary proceeding for determination of dischargeability under §523(a)(19) and
the two separate adversary proceedings can be consolidated for trial.

no obligation to raise §523(a)(2) and (4) claims, experience suggests either she will do so.  If that

occurs, the §523(a)(19) claim can be heard at the same time, thereby achieving the laudable goal

of judicial economy.

Accordingly, I find that at this point in the bankruptcy case, the balance tips in favor of

denial of the motion for relief from the automatic stay.[12]

For the reasons set forth above, I will deny the Motion insofar as it seeks: (1) relief from

the automatic stay;[13] (2) an extension of time to file a dischargeability complaint under 11 U.S.C.

§523(c) and (3) an extension of time to file a objection to discharge under 11 U.S.C. §727(a).[14]

---

[12]  That said, denial of the request for relief from the automatic stay and retention of the
litigation in the bankruptcy forum does not necessarily mean that the bankruptcy court should
exercise its discretion to liquidate the claim and enter a money judgment in a dischargeability
proceeding.  In many cases, it may be more appropriate to limit the decision to the question of
dischargeability and relegate the damages aspect of the dispute to the appropriate non-bankruptcy
court which has jurisdiction over the matter. The scope of the determination is left to the court's
discretion.  See, e.g., In re Kennedy, 108 F.3d 1015, 1017 (9th Cir. 1997);  In re Stahl, 261 B.R.
164, 170  (Bankr. W.D. Pa. 2001) In re Brady, 234 B.R. 652, 663 (Bankr. E.D. Pa. 1999).  In
light of the reasons for denial of Ms. Park's Motion and the possible ease with which the
damages can be liquidated in this case, it may be appropriate for this court to enter a money
judgment in favor of Ms. Park if she prevails on any dischargeability claims that may be
determined here.  However, it is unnecessary for me to resolve the issue at this time.

[13]  In this case, the deadline for the filing of a §523(c) dischargeability complaint under
Fed. R. Bankr. P. 4007(c) has not yet expired.  The docket reflects that notice has been given that
the last day to file a complaint to determine dischargeability or an objection to discharge is
November 20, 2006. There are a number of different actions the parties may take between now
and November 20, 2006.  I will not, at this time, analyze all of the possible developments in the
case and their impact on the issue of forum selection.  To do so would be to issue an
inappropriate advisory opinion.  I observe only that the balance of the competing considerations
may be affected by the actions of the parties and the posture of this matter after the Rule 4007(c)
deadline has passed.

[14]  I note that Ms. Park set forth no factual basis in support of the request for an extension
of time to object to the Debtor's discharge under 11 U.S.C. §727(a).  Her submission focused
exclusively on the issue of dischargeability.

An Order consistent with this Memorandum Opinion will be entered.

Date:   __October 23, 2006__          _____
                                      **ERIC L. FRANK**
                                      **U.S. BANKRUPTCY JUDGE**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

IN RE:     **FRANCES C. CHAN**     :     **Chapter 7**
                                  :
         **Debtor(s)**         :     **Bky. No. 06-13521ELF**
                                  :

# O R D E R

**AND NOW,** upon consideration of Dorothy Park's Motion for Relief from the Automatic
Stay and for an Extension of the Deadline for Filing a Complaint Objecting to Discharge or to
Determine Dischargeability ("the Motion"), the Debtor's response thereto, after a hearing, and
for the reasons set forth in the accompanying Memorandum Opinion, it is hereby **ORDERED**
that the Motion is **DENIED**.

Date:  <u>October 23, 2006</u>                _____

                                              **ERIC L. FRANK**
                                              **U.S. BANKRUPTCY JUDGE**